**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| EDWIN LORENZO, | : | CIVIL ACTION NO. 06-2717 (MLC) |
| | : | |
| Plaintiff, | : | **MEMORANDUM OPINION** |
| | : | |
| v. | : | |
| | : | |
| ELIJAH MOORE, et al., | : | |
| | : | |
| Defendants. | : | |

**COOPER, District Judge**

Pro se plaintiff, Edwin Lorenzo, alleges violations of the Eighth and Fourteenth Amendments of the United States Constitution. (Dkt. entry no. 4, Resp. to Order to Show Cause, Jones Cert., Ex. B, Am. Compl.) Defendants Sheriff's Officer Richard Vizzi ("Vizzi"), Sergeant Kenneth Noland ("Noland"), and Sheriff's Officer Ben Rivera-Estrada ("Estrada") (collectively, the "moving defendants") move separately for summary judgment in their favor pursuant to Federal Rule of Civil Procedure ("Rule") 56(c). (Dkt. entry nos. 47, 49, & 51.) Plaintiff opposes Vizzi's and Estrada's separate motions for summary judgment. (Dkt. entry nos. 57 & 58.) Plaintiff has not opposed Noland's motion for summary judgment. The Court, for the reasons stated herein, will (1) deny Vizzi's motion for summary judgment, (2) deny Estrada's motion for summary judgment, and (2) grant Noland's motion for summary judgment.

**BACKGROUND**

Plaintiff is incarcerated in East Jersey State Prison, but was an inmate in Monmouth County Correctional Institute ("MCCI") during the events described infra. (Dkt. entry no. 47, Vizzi Br., at 4.) On May 31, 2002, plaintiff appeared before the Honorable Francis P. DeStefano of the Monmouth County Superior Court at the Monmouth County Courthouse for a sentencing hearing. (Id.) Plaintiff stood up at some point during this hearing. (Id.) He was told to sit back down. (Id.) He refused, and sheriff's officers in the courtroom pushed him back down into his chair. (Id.; Am. Compl., at ¶ 8.)[1]

Plaintiff was then escorted to a holding cell by several sheriff's officers. (Vizzi Br., at 4.) Once plaintiff and the sheriff's officers reached the holding cell, Vizzi and Estrada claim that plaintiff refused to enter the holding cell. (Vizzi Br., at 4; dkt. entry no. 51, Estrada Br., at 1.) Plaintiff, however, claims that he was merely proceeding slowly into the cell, after being ordered by Vizzi to do so, because he was

---

[1] It is unclear if one of the moving defendants pushed plaintiff into his chair. The Amended Complaint states that he was "forcefully pushed into a chair by the defendant Sheriff." (Am. Compl., at ¶ 8.) Plaintiff's opposition briefs do not state that he was pushed back into his chair. (See dkt. entry no. 58, Pl. Opp. Br. to Vizzi's Mot., at 3; dkt. entry no. 57, Pl. Opp. Br. to Estrada's Mot., at 2.) Neither Vizzi, Estrada, nor Noland identify a defendant who pushed plaintiff here. (See Vizzi Br.; Estrada Br.; dkt. entry no. 49, Noland Br.)

shackled. (Pl. Opp. Br. to Vizzi's Mot., at 4.) Estrada then pushed plaintiff into the cell. (Estrada Br., at 1.)

Plaintiff then alleges that Vizzi and Estrada, along with the other named defendants, Sheriff's Officer Gordon Holder, Sergeant Elijah Moore, "and others that Plaintiff could not identif[y]" entered into the holding cell, "slammed Plaintiff into a cell wall and then yanked Plaintiff's pants down to his knees, forcing him onto the cell floor." (Pl. Opp. Br. to Vizzi's Mot., at 4.) They then began "kicking and punching Plaintiff on the ribs, head, and other part[s] of his body." (Id.) Plaintiff also states that he remained restrained at that time, as he was "handcuffed, with leg shackles' chains and [a] waist restraint belt." (Id. at 3.)

Vizzi states, by contrast, that "[a]t no time during [his] involvement with the Plaintiff did [he] strike or use force" against plaintiff. (Vizzi Br., Ex. D, Vizzi Cert., at ¶ 5.) Estrada contends that the only force he used against plaintiff at that time was when he pushed plaintiff into the holding cell. (Estrada Br., Ex. D, Estrada Cert., at ¶ 5.) Vizzi contends that the only additional physical contact the sheriff's officers had with plaintiff at that time was when sheriff's officers physically picked up and carried plaintiff to the transport vehicle to go back to MCCI, because plaintiff refused to enter that vehicle. (Vizzi Cert., at ¶ 5.)

3

Plaintiff was then taken back to MCCI. (Pl. Opp. Br. to Vizzi's Mot., at 4.) At that time, plaintiff claims that Noland "locked Plaintiff in segregation" rather than providing him with medical care for his injuries. (Id.) He alleges that he remained in segregation for "days" in "extreme pain and without medical care, until he wrote a letter to the Warden of the jail in order to receive medical attention." (Id.) Plaintiff apparently did receive medical attention three days after the alleged incident, on June 3, 2002. (Pl. Opp. Br. to Vizzi's Mot., Ex. 15, Medical Report.) This examination revealed that plaintiff had experienced (1) headaches, (2) "hemoptysis", (3) "pleuritic" chest pain, (4) bruising on the left upper humerus, left medial knee, and right elbow, (5) a one-half centimeter superficial laceration beneath the lower lip, (6) back pain, (7) elbow pain, (8) knee pain, and (9) left rib pain. (Id.)[2]

Plaintiff commenced this action in New Jersey Superior Court, Monmouth County in May, 2004. (See dkt. entry no. 1, Notice of Removal, Jones Cert., Ex. A, Compl.) The Superior Court dismissed the complaint in an order dated February 18, 2005 ("February 2005 Order") because of plaintiff's failure to comply

---

[2] "Hemoptysis" is expectoration of blood arising from the oral cavity, larynx, trachea, bronchi, or lungs. Taber's Cyclopedic Medical Dictionary 879 (Clayton L. Thomas ed., 17th ed. 1993). "Pleuritic" refers to pleurisy, which is inflammation of the pleura. The pleura is the membrane that enfolds the lungs. Id. at 1528-29.

4

with the notice requirements of the New Jersey Tort Claims Act. (Jones Cert., Ex. B., February 2005 Order.)  The New Jersey Appellate Division reversed that order in an order dated May 25, 2006 ("May 2006 Order") to the extent that it dismissed the complaint insofar as it asserted claims under federal law. (Jones Cert., Ex. C, May 2006 Order.)  The defendants subsequently removed this action to this Court on the basis of jurisdiction under 28 U.S.C. § 1441.  (Notice of Removal.)

Vizzi and Estrada now move separately for summary judgment on the grounds that they did not use excessive force against plaintiff in violation of the Eighth Amendment.  (Dkt. entry nos. 47 & 51.)  Noland moves for summary judgment on the grounds that he was not deliberately indifferent to plaintiff's medical needs. (Dkt. entry no. 49.)

**DISCUSSION**

**I.    Legal Standards**

**A.    Standard of Review for Summary Judgment**

Rule 56(c) provides that summary judgment is proper if the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Id.  The summary judgment movant bears the initial burden of showing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the

movant has met this prima facie burden, the non-movant must set out specific facts showing that there is a genuine issue for trial.  Fed.R.Civ.P. 56(e)(2).  A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.  Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original).  A fact is material only if it might affect the action's outcome under governing law.  Id. at 248.  "[T]here is no issue for trial unless there is sufficient

6

evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

A movant is not automatically entitled to summary judgment simply because the non-movant fails to oppose the motion. Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990). Instead, Rule 56(e) provides that the Court may grant the unopposed motion "if appropriate". Id.; Carp v. Internal Rev. Serv., No. 00-5992, 2002 U.S. Dist. LEXIS 2921, at *7 (D.N.J. Jan. 28, 2002) ("Even where the non-moving party has failed to establish a triable issue of fact, summary judgment will not be granted unless 'appropriate.'"). An unopposed motion is appropriately granted when the movant is entitled to judgment as a matter of law. Anchorage Assocs., 922 F.2d at 175.

"If the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court 'will accept as true all material facts set forth by the moving party with appropriate record support.'" Carp, 2002 U.S. Dist. LEXIS 2921, at *6-*7 (citations omitted). Further, even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a

motion for summary judgment." Morris v. Orman, No. 87-5149, 1989 U.S. Dist. LEXIS 1876, at *25-*26 (E.D. Pa. Mar. 1, 1989). Accordingly, when a plaintiff fails to respond to a defendant's motion for summary judgment, the Court need only examine the pleadings and any evidence attached to the defendant's motion. Atkinson v. City of Phila., No. 99-1541, 2000 U.S. Dist. LEXIS 8500, at *7 (E.D. Pa. June 20, 2000).

**B.   Section 1983 and the Eighth Amendment**

A plaintiff asserting civil rights violations under Section 1983 must establish that the defendant acted under color of state law to deprive him or her of a right secured by the Constitution or the laws of the United States. Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Section 1983 does not create substantive rights, but instead provides a remedy for the violation of rights created by other federal laws. Id.; Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

For a plaintiff's Section 1983 claims to survive a motion for summary judgment, there must be a genuine issue of fact as to whether the defendant (1) acted under color of state law; or (2) deprived the plaintiff of a federal right. Groman, 47 F.3d at 633. "The color of state law element is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law." Id. at 638. Further, officials may be liable under Section 1983 for the acts of those over whom they have

8

supervisory responsibility.  However, civil rights liability cannot be predicated solely on the doctrine of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Personal involvement in the alleged wrong-doing must be shown.  Id.  There is no dispute here that Vizzi, Estrada, and Noland, sheriff's officers and a sergeant employed by Monmouth County, acted under the color of state law.

### 1.  Excessive Force

Once it has been established that the defendant acted under color of state law, the Court must identify the federal right the defendant allegedly violated.  See Groman, 47 F.3d at 633.  Plaintiff alleges here that Vizzi and Estrada violated the Eighth Amendment by using excessive force.  (Pl. Opp. Br. to Vizzi's Mot., at 7-14; Pl. Opp. Br. to Estrada's Mot., at 5-12.)  In an excessive force claim under the Eighth Amendment, the inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000).  Summary judgment in favor of a defendant is not appropriate if it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain.  Id.

Several factors may be considered in determining an excessive force claim, including (1) the need for the application

9

of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of injury inflicted, (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them, and (5) any efforts made to temper the severity of a forceful response.  Id.  However, the analysis is driven by the extent of the force and the circumstances in which it was applied, and not by the resulting injuries.  Smith v. Mensinger, 293 F.3d 641, 648 (3d Cir. 2002).

An officer's failure to intervene during another officer's use of excessive force can itself constitute excessive force. Id. at 650.  Such a failure can be the basis of liability for an Eighth Amendment violation if the officer had a realistic and reasonable opportunity to intervene and refused to do so.  Id. at 650-51.

### 2.   **Deliberate Indifference to Medical Needs**

Deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment, which is applicable to the states through the Fourteenth Amendment, because it constitutes "unnecessary and wanton infliction of pain contrary to contemporary standards of decency."  Helling v. McKinney, 509 U.S. 25, 32 (1993).  Accordingly, to succeed on an Eighth Amendment medical-care claim, an inmate must establish that (1) there is a serious medical need, and (2) prison officials were

10

deliberately indifferent to this need. <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999). A medical need is considered serious if it is one that either a physician would diagnose as requiring treatment or a lay person would easily recognize as needing medical attention. <u>Monmouth County Corr. Inst'l Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987). Also, if denial or delay causes "unnecessary and wanton infliction of pain", a life-long handicap, or permanent loss, the medical need is considered serious. <u>Id.</u>

"Where prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest.'" <u>Id.</u> at 346 (internal citations omitted). Deliberate indifference is also manifest when prison officials "erect arbitrary and burdensome procedures that result in interminable delays and outright denials of medical care to suffering inmates." <u>Id.</u> at 347 (internal quotations and citations omitted). However, claims of negligence or malpractice are not sufficient to establish "deliberate indifference". <u>Rouse</u>, 182 F.3d at 197; <u>see</u> <u>White v. Napoleon</u>, 897 F.2d 103, 108 (3d Cir. 1990) ("Mere medical malpractice cannot give rise to a violation of the Eighth Amendment."). Thus, in order to state a cognizable claim for failure to provide medical care in violation of the Eighth Amendment, a prisoner

11

must allege acts or omissions that are sufficiently harmful to offend "evolving standards of decency". Estelle v. Gamble, 429 U.S. 97, 106 (1976).

**II. Legal Standards Applied Here**

    **A. Plaintiff's Eighth Amendment Claims Against Vizzi and Estrada**

Vizzi argues that he is entitled to judgment as a matter of law because (1) plaintiff does not put forth any specific evidence that he assaulted plaintiff, or used any force against plaintiff, and (2) he is not liable for failing to intervene in the alleged assault as no unreasonable force was used that would warrant intervention. (Vizzi Br., at 6-10; dkt. entry no. 50, Vizzi Reply Letter Br., at 1.) Estrada argues that he is entitled to judgment as a matter of law because (1) plaintiff does not put forth any specific evidence that he assaulted plaintiff, (2) the only force he used against plaintiff to place him in the holding cell was reasonable, and (3) plaintiff has failed to produce sufficient evidence showing that Estrada is liable for failure to intervene in the alleged assault. (Estrada Br., at 2-4; dkt. entry no. 55, Estrada Reply Letter Br., at 1-6.)

Vizzi and Estrada are not entitled to summary judgment here. Plaintiff identified both Vizzi and Estrada as present at the time of the alleged assault. (See dkt. entry no. 58, Pl. Cert., at ¶ 2; dkt. entry no. 57, Pl. Cert., at ¶ 3.) Vizzi and Estrada

12

do not deny being in the vicinity around the time the alleged assault took place.  (See Vizzi Br., Ex. D, Vizzi Cert.; Estrada Br., Ex. D, Estrada Cert.)  Thus, issues of fact remain as to whether Vizzi's and Estrada's conduct or lack thereof rises to the level of excessive force, and neither is entitled to summary judgment as a matter of law.  See Smith, 293 F.3d at 650 (vacating judgment in favor of officer defendants, as it was undisputed that all of the named officer defendants were in vicinity when plaintiff alleged he was beaten, and "[t]he extent of each officer's participation [in the alleged assault was] thus a classic factual dispute to be resolved by the fact finder.").

    **B.**    **Plaintiff's Eighth Amendment Claims Against Noland**

Plaintiff does not identify Noland as one of the individuals present at the alleged assault.  (See Pl. Opp. Br. to Vizzi's Mot., at 4.)  Rather, he alleges that Noland did not provide him with medical attention when he was taken back to MCCI.  (Id.)  Noland argues that he is entitled to judgment as a matter of law because he was not deliberately indifferent to plaintiff's medical needs.  (Noland Br., at 14-19.)

This Court agrees.  Plaintiff's injuries do not appear to have been sufficiently serious, as they consisted primarily of some bruising and pain.  (Pl. Opp. Br. to Vizzi's Mot., Ex. 15, Medical Report.)  Plaintiff also does not have any permanent or debilitating injuries as a result of the alleged assault.

13

(Noland Br., at 17.)  Further, Noland was not deliberately indifferent to plaintiff's medical needs, as plaintiff did receive a medical examination three days after the alleged incident.  (Medical Report.)  Thus, this Court holds that entering summary judgment in favor of Noland on plaintiff's Eighth Amendment claim is "appropriate" here.  See Anchorage Assocs., 922 F.2d 168 at 175.

## CONCLUSION

The Court, for the reasons stated supra, will (1) deny Vizzi's separate motion for summary judgment, (2) deny Estrada's separate motion for summary judgment, and (3) grant Noland's separate motion for summary judgment.  The Court will issue an appropriate order and judgment.

                                                s/ Mary L. Cooper
                                                **MARY L. COOPER**
                                                United States District Judge

**Dated:** January 30, 2008